Keith Fichtelman (SBN 262476)
**NELSON COMIS KETTLE & KINNEY LLP**
5811 Olivas Park Drive, Suite 202
Ventura, California 93003
Telephone: 805.604.4100
Facsimile: 805.604.4150
Email: kfichtelman@calattys.com

Attorneys for Plaintiffs
ROCK ON! FILMS, INC.;
JOE ECKARDT

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCK ON! FILMS, INC., a New York Corporation; JOE ECKARDT, an Individual;<br><br>Plaintiffs,<br><br>v.<br><br>CECILY GAMBRELL, an Individual; 17 MILE DRIVE ENTERTAINMENT, an Unknown Entity Type;<br><br>Defendants. | Case No.:   2:22-cv-2254<br><br>**COMPLAINT FOR:**<br>**1. DECLARATORY JUDGMENT RE: COPYRIGHT OWNERSHIP;**<br>**2. ATTEMPTED CIVIL EXTORTION;**<br>**3. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**4. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**JURY TRIAL DEMANDED** |

- 1 -
COMPLAINT

Plaintiffs ROCK ON! FILMS, INC. ("ROF"), and JOE ECKARDT ("Eckardt") (collectively "Plaintiffs") hereby bring this Complaint against CECILY GAMBRELL ("Gambrell") and 17 MILE DRIVE ENTERTAINMENT ("17MDE") (collectively "Defendants") for declaratory relief and damages as follows:

## PARTIES

1. ROF is a company incorporated in the State of New York. ROF is a film production company.

2. Eckardt is an individual who resides in the County of Ventura in the State of California. Eckardt is an executive and shareholder of ROF.

3. Gambrell is an individual who is believed to have at all relevant times resided in the State of California.

4. 17MDE is an unknown entity that identifies itself on its website as a "California based company." 17MDE's website also lists a contact phone number with a 310 area code.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this case pursuant to Title 28 of the United States Code sections 1331 and 1338 as this case arises under the laws of the United States and/or an act of Congress relating to copyrights. Specifically, this case arises under Title 17 of the United States Code, the Copyright Act.

6. This Court has personal jurisdiction over Gambrell as she is a resident of the State of California.

7. This Court has personal jurisdiction over 17MDE as it is apparently a California based company.

8. Venue is proper in this District pursuant to Title 28 of the United States Code sections 1391 and 1400. At least one of the defendants is believed

to reside in this judicial district and both Defendants are believed to have a regular and established place of business within this judicial district.

## GENERAL ALLEGATIONS

9. Eckardt has over 20 years of experience in the film industry. Eckardt had collaborated and worked with some of the biggest names and stars in the industry. Over the years, Eckardt directed and produced films and series such as, among others, the award winning, critically acclaimed, documentary *Champion*, screwball comedy *High Hopes*, superhero comedy *Pizza Man,* multiple Emmy nominated series *Tidying Up with Marie Kondo,* and *Selling Sunset* for Netflix.

10. In or about October 2010, Eckardt and his company, ROF, entered into an agreement with Antonio Rosales for the option to purchase the rights to a screenplay entitled *I Ride Alone*, written by Kyrle Rosales. *I Ride Alone* tells the life story of Kevin Benedec.

11. In or about 2012, Eckardt and ROF fully exercised such option by purchasing the "exclusive and irrevocable rights" to *I Ride Alone* and Eckardt was assigned all copyrights and other rights to the original screenplay for *I Ride Alone*.

12. Kyrle Rosales' *I Ride Alone* screenplay was registered with the US Copyright office on or about October 15, 2004, with the registration number of Pau002906553.

13. Antonio Rosales also separately entered into an agreement with Kevin Benedec for Mr. Benedec's life story. Mr. Rosales thereafter transferred such rights to Eckardt and ROF.

14. After acquiring the option rights to *I Ride Alone*, Eckardt's ex-wife, Gambrell, saw the script and did her own "page one" re-write of the script.

15. Thereafter, ROF and Gambrell, through a company known as The Film Emporium: A Motion Picture Company, entered into an agreement

concerning the rights to Gambrell's draft of the screenplay. This agreement treated Gambrell's work as a "work-for-hire" on behalf of ROF in exchange for a fixed amount of compensation to be paid upon the occurrence of certain contingencies relating to the production of the screenplay as a motion picture. Such contingencies, including the obtaining of full financing for the film or the film entering into pre-production, have not yet occurred. Such agreement is still in effect as Gambrell and her company do not have the option to terminate the agreement as her draft of the screenplay is entirely derivative of the copyrights owned by Eckardt.

16. The work-for-hire screenplay was registered with the US Copyright Office by ROF on or about May 29, 2013, with registration number Pau003679918.

17. In or about July 2020, Gambrell contact Eckardt to "touch base" regarding *I Ride Alone* and to request for financial help from Eckardt. When Eckardt refused, Gambrell implicitly threatened to release private, confidential (and false), information regarding Eckardt. Specifically, Gambrell indicated that she wanted "to enter into a mutually beneficial agreement that holds us both to total confidentiality, while I have nothing to hide, *you do* and I will give you my word that I will keep it confidential *if* you enter into a mutually bidding [sic] agreement" (emphasis added).

18. Eckardt understood these messages from Gambrell to mean that Gambrell would release some unspecified, incriminating, private information unless Eckardt agreed to provide financial support to Gambrell.

19. Recently, Eckardt and ROF have learned that Gambrell and 17MDE have been holding themselves out publicly on their website as having rights to produce *I Ride Alone* as a motion picture.

20. The 17MDE website identifies Gambrell as both the writer and producer for the project. It also identifies 17MDE as the production company and ROF as a "prior" production company on the project. The 17MDE website also indicates that *I Ride Alone* is "[b]ased on a true story."

21. ROF and Eckardt have encountered difficulty obtaining financing to produce *I Ride Alone* as a film due, in part, to concerns relating to ownership of the story and screenplay caused by Defendants' actions indicating that they own or control the rights to the screenplay.

22. ROF and Eckardt have never relinquished any of their copyrights held in *I Ride Alone* and have also not relinquished their assignment of life story rights for Kevin Bendec.

23. On or about September 21, 2021, Plaintiffs, through New York based counsel, sent a cease-and-desist letter to Gambrell, but Defendants have not ceased making public statements concerning their ownership of *I Ride Alone* and/or their intent to produce a film based on Plaintiffs' copyrights.

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT RE: COPYRIGHT OWNERSHIP
### [Against all Defendants]

24. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs above as though set forth fully herein.

25. Eckardt and ROF claim that they own certain copyrights to the original screenplay for *I Ride Alone* and own the rights to Kevin Benedec's life story. Additionally, Eckardt and ROF claim that they own the right to produce Gambrell's page-one re-write of the *I Ride Alone* screenplay, which was written as a work-for-hire for ROF.

26. Defendants claim that they own the copyrights to the work and intend to produce a film based on Gambrell's page-one re-write of the original *I Ride Alone* screenplay.

27. Defendants' actions have interfered with Plaintiffs' use of the copyrights they own and/or control relating to *I Ride Alone*.

28. Accordingly, an actual controversy exists between Plaintiffs and Defendants and declaratory relief is appropriate and necessary to establish ownership of the subject copyrights and respective rights thereto.

29. Plaintiffs also seek injunctive relief to prevent Defendants from falsely claiming that they own the copyrights at issue and/or have the right to produce a film based on such copyrights.

30. Pursuant to 17 U.S.C. § 505 Plaintiffs request that the Court award Plaintiffs their reasonable attorneys' fees when they prevail in this matter.

## SECOND CAUSE OF ACTION
## ATTEMPTED CIVIL EXTORTION
### [Against Gambrell]

31. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs above as though set forth fully herein.

32. On or about July 28, 2020, Gambrell improperly threatened Eckardt that she may release unspecified confidential information relating to Eckardt unless he agreed to enter into a new agreement for a financial arrangement with Gambrell.

33. At that time of making the threat, Gambrell intended for the threat that she would release confidential information regarding Eckardt to cause Eckardt to provide money or property to Gambrell.

34. As a proximate result of Gambrell's actions, Eckardt suffered damages in an amount to be proven at trial.

35. The conduct described herein constitutes "oppression, fraud, or malice" as those terms are defined in California Civil Code section 3294 and Eckardt is therefore entitled to punitive damages in an amount according to proof.

## THIRD CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE
### [Against All Defendants]

36. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs above as though set forth fully herein.

37. Within the past four years, Eckardt had entered into negotiations with potential investors to produce *I Ride Alone* as a motion picture. Such negotiations advanced to the point that there existed a probability of future economic benefit to Eckardt.

38. Defendants were aware that Eckardt was seeking investors and was negotiating with third-parties as potential investors to finance *I Ride Alone* as a motion picture.

39. Defendants intentionally represented to the public by, among other things, that they held rights to *I Ride Alone* and were also seeking to produce the film. Such acts were wrongful as Defendants knew that they did not possess such rights.

40. When third-party investors learned of Defendants' representations, they chose not to proceed with the financing being negotiated with Eckardt as such investors did not want to risk a legal dispute over ownership of the rights to *I Ride Alone*.

41. Defendants' actions proximately caused Eckardt financial harm in an amount to be proven at trial.

42. The conduct described herein constitutes "oppression, fraud, or malice" as those terms are defined in California Civil Code section 3294 and Eckardt is therefore entitled to punitive damages in an amount according to proof.

## FOURTH CAUSE OF ACTION
## NEGLIGENT INTERFERENCE WITH ECONOMIC ADVANTAGE
## [Against All Defendants]

43. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs above as though set forth fully herein.

44. Within the past four years, Eckardt had entered into negotiations with potential investors to produce *I Ride Alone* as a motion picture. Such negotiations advanced to the point that there existed a probability of future economic benefit to Eckardt.

45. Defendants were aware that Eckardt was seeking investors and was negotiating with third-parties as potential investors to finance *I Ride Alone* as a motion picture.

46. Defendants acted negligently by representing to the public by, among other things, that they held rights to *I Ride Alone* and were also seeking to produce the film. Such acts were wrongful as Defendants knew that they did not possess such rights.

47. When third-party investors learned of Defendants' representations, they chose not to proceed with the financing being negotiated with Eckardt as such investors did not want to risk a legal dispute over ownership of the rights to *I Ride Alone*.

48. Defendants' actions proximately caused Eckardt financial harm in an amount to be proven at trial.

# PRAYER

Wherefore, Plaintiffs pray for judgment and relief from the Court as follows:

    a. For a declaration that Plaintiffs own the copyrights to *I Ride Alone*, including rights to produce a film based on such copyrights;

    b. For injunctive relief prohibiting Defendants from claiming ownership of *I Ride Alone* copyrights and/or the right to produce a film based on such copyrights;

    c. For damages against Gambrell for the attempted extortion of Eckardt,

    d. For pre- and post-judgment interest on all awards for which they are available;

    e. For reasonable attorneys' fees and costs incurred herein, to the extent allowed by law or contract;

    a. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all causes of action and issues that are triable by a jury.

Dated: April 4, 2022

**NELSON COMIS KETTLE & KINNEY LLP**
By:   /s/ Keith Fichtelman\_\_\_\_\_

Keith Fichtelman
Attorneys for Plaintiffs
ROCK ON! FILMS, INC.;
JOE ECKARDT